UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

In re:

Palm Beach Finance Partners, L.P. and Palm Beach Finance II, L.P.,

Debtor(s).

Case No. 09-36379-BKC-PGH
Chapter 11

_______________________________/

Barry E. Mukamal, in his capacity as Liquidating Trustee for the Palm Beach Finance Partners Liquidating Trust and the Palm Beach Finance II Liquidating Trust;

Plaintiff,

v.

Fidelis Foundation,

Defendant.

_______________________________/

Adv. Case No. 11-3030-PGH

## AMENDED COMPLAINT TO RECOVER TRANSFERS[1]

Barry E. Mukamal ("***Plaintiff***"), in his capacity as Liquidating Trustee for the Palm Beach Finance Liquidating Trust and the Palm Beach Finance II Liquidating Trust (collectively, the "***Liquidating Trusts***"), sues Fidelis Foundation ("***Defendant***") and alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1. Palm Beach Finance Partners, L.P. ("***PBF I***") and Palm Beach Finance II, L.P. ("***PBF II***") (PBF I and PBF II are referred to each as a "***Palm Beach Fund***" or collectively, the "***Palm Beach Funds***") were Delaware limited partnerships whose principal place of business was located in Palm Beach County, Florida.

[1] Amended solely to add Schedule 2 and additional allegations.

2. The Palm Beach Funds were formed to make the investments described in *Section I.A* below. PBF I was formed in 2002 while PBF II was formed in 2004.

3. The general partner for the Palm Beach Funds was Palm Beach Finance Capital Management, L.P. ("***PBLP***"). The investment manager for the Palm Beach Funds was Palm Beach Capital Management, LLC ("***PBLLC***"; and together with PBLP, the "***Palm Beach Managing Entities***").

4. On November 30, 2009 ("***Petition Date***"), the Palm Beach Funds filed voluntary petitions under Chapter 11 of the United States Bankruptcy Code. Orders for relief were entered and Mr. Mukamal was subsequently appointed Chapter 11 trustee for the Palm Beach Funds.

5. Thereafter, pursuant to a confirmed joint plan of liquidation, Mr. Mukamal was appointed Liquidating Trustee for the Liquidating Trusts.

6. Pursuant to the confirmed joint plan of liquidation, all claims and causes of action held by the Palm Beach Funds are reserved, preserved and retained by the Liquidating Trusts.

7. Defendant is, upon information and belief, a Minnesota nonprofit corporation.

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b) and may enter any order or final judgment.

9. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (H) and (O).

## ALLEGATIONS

### *I. The Petters Investment*

#### A. General Description of the Investment

10. Beginning in approximately 1995, Thomas Petters ("***Petters***") began raising money by offering and selling promissory notes to members of the public.

11. Petters offered and sold the notes to various feeder fund lenders, which in turn, raised their capital from private investors.

12. In offering and selling the notes, Petters represented to lenders that the proceeds from the sale of the notes would be used to finance so-called "purchase order financing."

13. Under Petters's version of purchase order financing, he arranged for the sale and delivery of overstock consumer electronics from manufacturers or suppliers to certain "big box" retailers such as Costco, Sam's Club and B.J.'s Wholesale Club. The financing provided by the lenders was necessary to bridge the period between when the suppliers demanded payment and when the retailers paid for the merchandise.

14. The main Petters entity that arranged these purchase and financing transactions was Petters Company, Inc. ("***PCI***"). Single purpose entities ("***SPE***") affiliated with PCI were formed by Petters and his associates to handle loans for particular lenders that financed the transactions.

15. The main suppliers that were allegedly selling the merchandise that formed the basis of the purchase order financing transactions were Nationwide International Resources, Inc. ("***Nationwide***") and Enchanted Family Buying Company ("***Enchanted***").

16. To evidence the purchase financing transactions, Petters or persons working on his behalf, typically provided a series of documents to the lenders including executed note documents, purported purchase orders from a retailer, purported bills of sale from the vendors, collateral and credit insurance and documents assigning a security interest in the underlying merchandise to the financing lender (collectively, the "***Loan Documents***").

**B. The Palm Beach Funds's Investment in Petters**

17. The Palm Beach Funds were formed to invest in Petters purchase financing transactions.

18. In particular, in 2002, the principals of the Palm Beach Managing Entities – Bruce Prevost and David Harrold – were introduced to Frank Vennes ("***Vennes***"). At that time, Vennes and his entity, Metro Gem, Inc. ("***MGI***"; and together with Vennes, the "***Vennes Parties***"), a Minnesota corporation, had invested in Petters purchase financing transactions for several years.

19. Based on misrepresentations made by the Vennes Parties, the Palm Beach Funds raised monies from selling limited partnership stakes to investors and in the case of PBF II, by borrowing hundreds of millions of dollars from an offshore lender, Palm Beach Offshore Ltd.

20. Nearly all of the monies raised by the Palm Beach Funds were then used to invest in Petters purchase financing transactions.

***II. The Petters Fraud***

21. The Petters purchase financing transactions were in actuality an elaborate *ponzi* scheme.

22. Namely, there was never any (i) merchandise or (ii) contracts to purchase or sell such merchandise with a particular big box retailer. Instead, Petters, conspiring with others, operated a multi-billion dollar *ponzi* scheme. In likely every instance that monies were sent to Nationwide or Enchanted by the Palm Beach Funds and other lenders to finance the purchase of merchandise, Nationwide and Enchanted deducted a small commission for their benefit and then remitted the remaining funds to PCI. Thereafter, such funds were used to repay earlier investors and fund the lavish lifestyle of Petters and that of his associates.

23. The direct effect of Petters's fraudulent activities was that the Palm Beach Funds's investments in Petters purchase financing transactions were worthless.

24. In September of 2008, agents for the Federal Bureau of Investigation raided PCI's offices. Thereafter, Petters was arrested by federal agents on October 3, 2008 and then indicted on charges of mail and wire fraud, conspiracy to commit mail and wire fraud, conspiracy to commit money laundering and money laundering, all in connection with the PCI purchase financing transactions.

25. On December 2, 2009, a jury in the United States District Court for the District of Minnesota found Petters guilty of all counts charged.

26. On April 8, 2010, District Court Judge Richard H. Kyle sentenced Petters to 50 years in prison for his crimes.

27. On September 29, 2010, PCI and Petters Group Worldwide, LLC pled guilty to wire fraud, conspiracy to commit wire fraud, and conspiracy to commit money laundering relating to their roles in the *ponzi* scheme.

***III. The Vennes Parties Action and Transfers to the Defendant***

28. In conjunction with the filing of this adversary, Plaintiff, on behalf of the Palm Beach Funds, will file an action in the Bankruptcy Court for the Southern District of Florida against the Vennes Parties ("***Vennes Action***").

29. The Vennes Action seeks to avoid all transfers made by the Palm Beach Funds to the Vennes Parties within four years of the Petition Date. Additionally, the Vennes Action seeks an award of monetary damages in tort relating to the significant misrepresentations, omissions and breach of fiduciary duties by the Vennes Parties to the Palm Beach Funds with respect to their investing in Petters purchase financing transactions.

30. As such, at all times relevant to the allegations set forth in this Complaint, the Palm Beach Funds were creditors of the Vennes Parties.

31. As set forth on Schedule 1, during the time period that the Vennes Parties were committing these tortious acts and receiving transfers from the Palm Beach Funds, MGI made transfers of its property to the Defendant ("***MGI Transfers***"). The Palm Beach Funds reserve the right to amend this schedule based on additional information obtained during discovery in this adversary proceeding.

32. In addition, as set forth on Schedule 2, during the time period that the Vennes Parties were committing the tortious acts and receiving transfers from the Palm Beach Funds, MGI made transfers of its property to The National Christian Foundation ("***NCF***"), which, in turn, transferred such property to the Defendant ("***NCF Transfers,***" and, together with the MGI Transfers, the "***Transfers***"). Upon information and belief, NCF asserts itself to be a conduit and made such transfers to the Defendant in each instance within a few days of receiving the transfer from MGI in accordance with the instructions received from the Vennes Parties.

**Count 1 – Fraudulent Transfer Pursuant to M.S.A. §§ 513.44 and 513.48 or other applicable law**

33. Plaintiff reasserts the allegations set forth in paragraphs 1 through 31 as if fully set forth herein.

34. As set forth in the Vennes Action, and pursuant to M.S.A. § 513.41, the Palm Beach Funds are creditors of the Vennes Parties.

35. MGI made the Transfers to or for the benefit of the Defendant within six years of the Petition Date.

36. MGI did not receive reasonably equivalent value in exchange for the Transfers made to or for the benefit of the Defendant.


LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363

37. MGI was insolvent at the time of the Transfers.

38. The net assets of MGI were unreasonably small in relation to the Transfers.

39. At the time the Transfers were made to or for the benefit of the Defendant, MGI was insolvent and would not be able to satisfy its liabilities as they came due.

40. At the time the Transfers were made to or for the benefit of the Defendant, MGI was engaged in, or was about to engage in, a business or a transaction for which the remaining assets were unreasonably small in relation to the business or transaction.

41. At the time of the Transfers, MGI intended to incur or believed that it would incur, debts that were beyond its ability to pay as such debts matured.

**Count 2 – Fraudulent Transfer Pursuant to M.S.A. §§ 513.45 and 513.48 or other applicable law**

42. Plaintiff reasserts the allegations set forth in paragraphs 1 through 31 as if fully set forth herein.

43. As set forth in the Vennes Action, and pursuant to M.S.A. § 513.41, the Palm Beach Funds are creditors of the Vennes Parties.

44. MGI made the Transfers to or for the benefit of the Defendant within six years of the Petition Date.

45. MGI did not receive reasonably equivalent value in exchange for the Transfers to or for the benefit of the Defendant.

46. MGI was insolvent at the time of the Transfers.

## Count 3 – Unjust Enrichment

47. Plaintiff reasserts the allegations set forth in paragraphs 1 through 31 as if fully set forth herein.

48. The Defendant received a benefit by virtue of the Transfers made to the Defendant by MGI.

49. The Defendant has knowledge of such benefit.

50. The Defendant voluntarily accepted and retained the benefit conferred.

51. The Defendant's receipt of the benefit of the Transfers unjustly enriched the Defendant to the detriment of MGI and its creditors.

52. Under the circumstances set forth herein, it would be inequitable for the Defendant to retain such benefit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(a) With respect to Counts 1 and 2, enter judgment against the Defendant in the total amount of the Transfers received by the Defendant or made for the Defendant's benefit, along with all other transfers made to the Defendant or for the Defendant's benefit which are avoidable under Counts 1 and 2 that are later discovered, and all other relief provided for under § 513.48 (or other applicable law);

(b) With respect to Count 3, enter judgment against the Defendant in the total amount of the Transfers;

(c) With respect to all Counts, award Plaintiff's reasonable attorney's fees and costs to the extent allowed under applicable law or statute;

(d) With respect to all Counts, award prejudgment interest to the extent allowed under applicable law or statute; and

(e) Grant such further relief this Court deems just and proper.

s/ Michael S. Budwick
Michael S. Budwick, Esquire
Florida Bar No. 938777
mbudwick@melandrussin.com
Jessica L. Wasserstrom, Esquire
Florida Bar No. 985820
jwasserstrom@melandrussin.com
Jonathan S. Feldman, Esquire
Florida Bar No. 12682
jfeldman@melandrussin.com
MELAND RUSSIN & BUDWICK, P.A.
3000 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 358-6363
Telecopy: (305) 358-1221

Attorneys for Plaintiff

**SCHEDULE 1**

| Payor Entity | Transaction Date | Check No | Payee | Disbursement Amount |
|---|---|---|---|---|
| Metro Gem, Inc. | 2/13/2004 | 21020 | Fidelis Foundation | 1,083.00 |
| Metro Gem, Inc. | 7/27/2005 | 22800 | Fidelis Foundation | 10,000.00 |
| Metro Gem, Inc. | 6/20/2007 | Wire | Fidelis Foundation | 250,000.00 |
| Metro Gem, Inc. | 1/10/2008 | 28442 | Fidelis Foundation | 1,000,000.00 |
| | | | | **$ 1,261,083.00** |

**Schedule 2**

| Payor Entity | Date | Check No | Amount |
|---|---|---|---|
| Metro Gem, Inc. | 1/6/2006 | 23367 | 4,000,000.00 |
| Metro Gem, Inc. | 9/27/2006 | Wire | 610,000.00 |
| Metro Gem, Inc. | 10/2/2006 | Wire | 400,000.00 |
| Metro Gem, Inc. | 12/19/2006 | Wire | 4,000,000.00 |
| | | | **$ 9,010,000.00** |